UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PAUL L. BROWNING,<br><br>    Plaintiff,<br><br>  v.<br><br>MCI , *et al.*,<br><br>    Defendants. | 3:00-cv-00633-ECR-VPC<br><br>**REPORT AND RECOMMENDATION**<br>**OF U.S. MAGISTRATE JUDGE**<br><br>June 30, 2010 |

This Report and Recommendation is made to the Honorable Edward C. Reed, Jr., Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court are plaintiff's motion to enforce the settlement agreement (#403, #409 (accompanying exhibits)), and defendants' motion to enforce the settlement agreement (#402). Plaintiff responded (#404), and defendants did not reply. Defendants responded (#408), and plaintiff replied (#410).

### I. HISTORY & PROCEDURAL BACKGROUND

**A.    The Parties' Motions to Enforce and Accompanying Objections**

The court has encountered numerous motions, notices, declarations from both parties with respect to the enforcement of the settlement agreement. Because the court has reviewed all filings from all parties, it briefly recounts the events leading to the June 21, 2010 evidentiary hearing. Pursuant to court order (#411), defendants filed a notice of compliance (#412) on February 12, 2010, to which plaintiff objected (#413). On March 1, 2010, after review of defendants' notice of compliance (#412) and plaintiff's objections (#413), the court issued an order clarifying what constituted satisfaction of the provisions in the agreement (#414). Plaintiff filed objections to defendants' notice of compliance (#415); however, the court received them on March 4, 2010. Plaintiff filed an additional motion (#418), requesting that the court reconsider its March 1, 2010 order (#418). Two weeks later, plaintiff then requested additional consideration of his motion at

1  #418 (#420).

2  On March 19, 2010, defendants filed a second notice of compliance (#417), requesting that the court issue an order to dismiss the case with prejudice. Plaintiff has submitted other declarations and notices to the court (#416 (notice of "events relevant to the continuing settlement debacle"), #s 419, 422 (notice of objection to defendants' March 17, 2010 letter to current NDOC telephone provider), and #421 (notice that other named defendants, MCI and Ms. Wise, have fulfilled their settlement obligations)).

Noting that numerous issues of fact remained as to the terms and satisfaction of the settlement agreement, the court ordered the parties to appear at an evidentiary hearing to present evidence and hear argument on June 21, 2010. The parties appeared in open court, and the court took all issues under submission. The court now rules upon the remaining issues.

**B.    Case History**

Plaintiff Paul Browning ("plaintiff") is a *pro se* prisoner currently residing in the condemned men's unit ("death row") at Ely State Prison ("ESP") in the custody of the Nevada Department of Corrections ("NDOC"). Plaintiff originally filed his civil rights suit pursuant to 42 U.S.C. § 1983. Plaintiff named as defendants Bill Donat, ESP Associate Warden; E.K. McDaniel, ESP Warden; MCI, WorldCom Communications, Inc, (former) telephone provider for ESP; and Ms. Tonya Wise, MCI and ESP telephone administrator (#100). In general, plaintiff alleged that defendants violated his civil rights by recording or monitoring his telephone calls to his attorney. *Id.*

On October 24, 2007, plaintiff and defendants Wise and MCI dismissed all claims pursuant to a settlement agreement (#333). On September 11, 2008, the remaining defendants (defendants Donat and McDaniel) and plaintiff stipulated to dismiss all remaining claims (#400). The settlement agreement ("agreement") provided that the United States District Court "shall retain sole and exclusive jurisdiction to hear and decide any dispute that may arise in relation to the terms, conditions, enforcement or any matter involving [the settlement] agreement." *Id.* p. 8. All parties, including defendants' counsel, Mr. Clark Leslie, signed the agreement. *Id.*

The agreement provided that plaintiff would dismiss all claims upon the defendant's furnishing of consideration, which included a letter to the current NDOC provider and several items

of property. In relevant part, the agreement provided as follows:

> Defendants shall provide to Browning an MP3 player that has been more particularly described to Browning. This MP3 player is not yet available through the prison canteen but shall be provided to Browning notwithstanding this fact as additional consideration for this agreeement. This device provides high quality sound reproduction . . .
>
> Pending the kiosk [digital music delivery system], the initial batch of music or other audio material selected by Browning shall be downloaded prior to providing the device to Browning so that he may begin enjoyment of the device immediately upon receipt of the MP3 player . . . . A list of all recordings available cannot be provided to Browning as such a list has over 2,000,000 items that are available. However, Browning will be permitted to identify specific artists and their works that he is interested in purchasing and the available recordings will be set forth in a writing for his review and selection. . .
>
> Browning currently possesses an AM/FM cassette player (Panasonic RX-IS470) that is not in working order. The Defendants agree to pay for the repair of this radio. Per the parties on the record representations at the August 29, 2008 hearing in the event this radio cannot be repaired[,] it will be replaced by defendants . . .
>
> A Bose AW-II was identified in a previous settlement with MCI. Defendants shall obtain such a radio and provide it to a designee of Browning's choice who is not a prisoner and is living outside of any prison environment. If the radio described in the settlement cannot be obtained, the Defendants shall purchase another available radio of equal of greater value and with equal or greater functions.

(#400, Ex. #3).

On November 6, 2009, defendants submitted a motion to enforce the settlement agreement (#402). On November 25, 2009, plaintiff submitted a motion to enforce the settlement agreement (#403). On January 7, 2010, the court held a hearing on both of the motions to enforce in light of these conflicting accounts and interpretations of the agreement (#411). The court addressed numerous issues and resolved many of them. Of the remaining issues, the court narrowed their scope and sought a means to achieve resolution. In its minutes, the court noted that the parties would agree as follows:

> Bill Donat and E.K. McDaniel ("Defendants") will replace the non-working MP3 player currently in the possession of the plaintiff with a functioning MP3 player.
>
> Defendants will have all songs included in plaintiff's October 10,

> 2009 [sic][1] letter downloaded onto the replacement MP3 player.
>
> Defendants will direct that sixty dollars ($60.00) be deposited into plaintiff's Trust II account.
>
> Mr. Leslie [defendants' counsel] agrees to review the Phillips US-BC 10 radio and the RD-EZ 11J JVC AM/FM CD radio to determine which radio complies with the rules and regulations of the Nevada Department of Corrections, and defendants will provide plaintiff with the appropriate radio.
>
> Mr. Leslie will draft a letter to plaintiff outlining their agreement that there shall be no recordings by any means of any and all privileged or confidential communication, as such terms are defined by state and federal law, between Browning and any third party by any telephonic recording device without a prior court order.
>
> Upon final completion of the outstanding settlement terms, the defendants shall provide a Bose acoustic wave music system to the designee of Mr. Browning. (#411).
>
> Defendants shall have thirty (30) days or until Monday, February 8, 2010 to complete the work as agreed to by the parties. Thereafter, Mr. Leslie shall file a notice of compliance with the Court by no later than Friday, February 12, 2010.

(#411).

On February 4, 2010, defendants sent the Bose radio to plaintiff's designee (#417, Ex. F; Evid. Hrg. June 21, 2010).

On February 9, 2010, defendants deposited sixty dollars ($60.00) in plaintiff's Trust II account (#412, Ex. B).

On February 11, 2010, defendants received the replacement radio and MP3 player (#412, p. 5). Rather than deliver the items (pursuant to the court's order), Mr. Leslie instructed his client to not provide the items "until the Court approved the above-described arrangements and issued an order that the Settlement Agreement has been satisfied . . ." *Id.* p. 5. He explained that "[g]iven Plaintiff's proclivities, counsel is concerned that if the Plaintiff receives these devices prior to his acknowledgment that the above-described arrangements are satisfactory or, absent a court finding to this effect, the complaints about non-compliance will be never ending" (#412, p. 5 n. 3).

---

[1] This appears to be a clerical error in light of plaintiff's testimony at the June 21, 2010 evidentiary hearing. At that hearing, plaintiff clarified that the letter was in fact dated October 10, 2008.

4

As of February 8, 2010, Mr. Leslie had not produced a letter to the current NDOC telephone provider as outlined in the court's order and the parties' settlement agreement.

On March 1, 2010, after review of the parties' filings in the matter (and further disagreements), the court further sought to clarify the outstanding obligations of the parties and found as follows:

> 1. Upon presentation of the MP3 player and boombox to the plaintiff, the court orders that the consideration set forth in the settlement agreement regarding the MP3 player and AM/FM CD player is deemed satisfied for purposes of enforcing the settlement agreement;
>
> 2. Unless otherwise indicated or shown by evidence not to have occurred, the term of the settlement agreement pertaining to the Bose AW II sound system to be provided to Mr. Issacs is deemed satisfied for purposes of enforcing the settlement agreement;
>
> 3. Unless otherwise indicated or shown by evidence not to have occurred, the term of the settlement agreement pertaining to the reimbursement of $60.00 into plaintiff's Trust II account for the MP3 downloads is deemed satisfied for purposes of enforcing the settlement agreement;
>
> 4. The court concludes that the defendants have acted in good faith, reasonably, and made appropriate efforts to comply with all matters represented to the court such that defendants have succeeded in providing sufficient consideration, as defined in the settlement agreement, to satisfy the terms of the settlement agreement's terms regarding downloaded songs onto the replacement MP3 player;
>
> 5. That the court concludes and finds, as to the new AM/FM CD player, that any songs "lost" on the original MP3 player are available on music CDs that plaintiff may purchase as he will possess a CD music device that will allow him to play and enjoy the songs purportedly lost and are not capable of being downloaded onto his MP3;
>
> 6. Defendants' responsibilities for alleged or real "defects," in either sound device identified above, terminate, end and are concluded upon plaintiff's receipt of these devices and, in the event of any defect, that plaintiff is to utilize the warranty provisions that will accompany each such device in the same manner and fashion as any other consumer; and
>
> 7. A letter from counsel that will be sent to the vendor servicing Ely State Prison's telephone system that includes a verbatim recitation of the terms and conditions for monitoring or intercepting plaintiff's telephone calls will satisfy the conditions of the settlement agreement.

(#414).

On March 12, 2010, defendants attempted but did not deliver the MP3 and radio to plaintiff.

5

1  ESP Correctional Officer Huston ("Huston") testified that plaintiff refused delivery of the devices
2  because the MP3 player was not loaded with songs, had no instructions, and was not working (Evid.
3  Hrg. June 21, 2010). Huston also noted that plaintiff refused the MP3 player because plaintiff stated
4  that other aspects of the settlement agreement were not being followed. *Id.* Specifically, plaintiff
5  was not in receipt of the letter. *Id.*
6  On March 17, 2010, Mr. Leslie drafted a letter addressed to Trudi Darron of CenturyLink.
7  *See* #417, Ex. E; Evid. Hrg. June 21, 2010, Ex. E). The letter itself quotes verbatim from the
8  settlement agreement as required by the court's order at #411.
9  On May 26, 2010, the court issued a minute order requiring the parties to attend an
10 evidentiary hearing. The hearing was to focus on the four aspects of the settlement agreement that
11 continued to be in dispute: (1) the letter to be sent to the current NDOC provider; (2) the delivery
12 of the MP3 player; (3) the delivery of the radio; and (4) the delivery of the Bose radio.
13 On June 21, 2010, the court held an evidentiary hearing. First, the parties discussed the
14 March 17, 2010 letter (Evid. Hrg. June 21, 2010, Defs. Ex. E). Plaintiff testified that the letter did
15 not reflect the understanding of the parties upon entering the agreement. *Id.* Second, defendants
16 produced the MP3 player in open court. The court found that the equipment was operational, but
17 that the unit only contained sixty-five (65) songs. Third, defendants produced the AM/FM radio in
18 open court. The court offered to test the equipment, but plaintiff testified that such testing was not
19 necessary. Fourth, with respect to the Bose radio, plaintiff testified that defendants McDaniel and
20 Donat were to purchase an additional radio, like the one in the settlement between plaintiff and
21 defendants Wise and MCI, and send that radio to a designee of plaintiff's choice. *Id.*
22 The court now rules on the motions to enforce.

## II. DISCUSSION & ANALYSIS

**A.     Discussion**

    **1.     Jurisdiction**

26 As an initial matter, the court must address its jurisdiction over the settlement agreement.
27 Of course, courts have inherent authority to enforce settlement agreements between parties in
28 pending cases. *See Metronet Servs. Corp. v. U.S. West Communications*, 329 F.3d 986, 1013-14 (9th

Cir. 2003); *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1136-38 (9th Cir. 2002); *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994). However, it must be noted that this case is no longer pending. In this case, the settlement agreement has been drafted and signed by all parties, and the District Court has granted dismissal of the case with prejudice (#400).

Yet, "[w]hen a district court incorporates the terms of a settlement agreement or a stipulation into an order, it retains subject matter jurisdiction to interpret and enforce the contents of that order." *Nehmer v. U.S. Dep't of Veterans Affairs*, 494 F.3d 846, 856 (9th Cir. 2007). "Enforcement of a settlement agreement . . . 'requires its own basis for jurisdiction[,]' and . . . a basis for jurisdiction may be furnished 'by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." *Flanagan v. Arnaiz*, 143 F.3d 540, 544 (9th Cir.1998) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1991)).

The settlement agreement, here, clearly contains such a provision, and the dispute arises from the terms of the settlement agreement. Thus, the court has jurisdiction to consider and rule upon the issue.

**2.    Court's Enforcement Power**

"Settlement agreements are designed to, and usually do, end litigation, not create it." *In re City Equities Anaheim*, 22 F.3d 954, 957 (9th Cir. 1994). "This circuit also recognizes a trial court's inherent enforcement power." *Id.* (citing *Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir.1978)). Summary enforcement evolved because "high judicial favor" has been accorded to the voluntary settlement of disputes and the efficiency of having one court see litigation through to its conclusion avoids the duplication of effort. *See Autera v. Robinson*, 419 F.2d 1197, 1200 (D.C.Cir.1969), *cited with approval in In re City Equities Anaheim*, 22 F.3d 954 (9th Cir. 1994).

However, the practice of summary enforcement is not without limits. Courts in this circuit have recognized that "summary enforcement 'is ill-suited to situations presenting complex factual issues related either to the formation or the consummation of the [settlement] contract, which only testimonial exploration in a more plenary proceeding is apt to satisfactorily resolve." *Russell v. Puget Sound Tug & Barge Co.*, 737 F.2d 1510, 1511 (9th Cir.1984) (quoting *Autera*, 419 F.2d at

7

1200). Summary enforcement is inappropriate where material facts are in dispute. *See Callie v. Near*, 829 F.2d 888, 890 (9th Cir.1987) (holding that district court abused its discretion by not conducting an evidentiary hearing concerning two factual issues with respect to the settlement agreement).

**B.     Analysis**

     **1.     Letter to NDOC Telephone Provider**

The agreement provided that defendants would "advise the current NDOC telephone provider of [the] agreement" (#400, Ex. 1, p. 4). The agreement further states that "Defendants agree to immediately begin the process of fulfilling the obligations incumbent with providing Browning the consideration identified above." *Id.* p. 5. Mr. Leslie signed the agreement on September 1, 2008.

The court is troubled by the meaning defendants attach to the word "immediate" in that Mr. Leslie appears to have completed the first draft of the letter on March 17, 2010, a full year and a half after the signing of the agreement. In addition, Mr. Leslie appears to have made inconsistent representations to this court. On February 12, 2010, Mr. Leslie represented to this court in a document bearing his signature that "[a] letter has been drafted by counsel." Yet one month later, on March 19, 2010, Mr. Leslie attaches an email correspondence with defendant McDaniel as an exhibit to a court filing. The email, dated March 12, 2010, states, "Just so you know, I'll draft the letter to the phone vendor *today* and copy him on it" (#417, Ex. D) (emphasis added).

However, the effect of such inconsistencies and untimeliness does not appear to be so grave as to incur any further action from the court. The agreement does not state that time is of the essence, and plaintiff does not argue nor does he demonstrate that his rights have been prejudiced in the absence of such a letter over the last year and a half. Thus, notwithstanding Mr. Leslie's failure to timely draft a letter, the court finds that the March 17, 2010 letter complies with the material terms of the agreement.

     **2.     Bose AW-II Radio**

The agreement provided that defendants were to obtain a Bose AW-II radio to a designee of plaintiff's choice. *See* #400, Ex. 1, p. 4. Plaintiff argues that the agreement merely identifies the type of radio that was the subject of his settlement with prior defendants. Plaintiff appears to concede

8

that such a radio was purchased and sent to a designee of his choice (#421), but he argues that the agreement requires that defendants McDaniel and Donat purchase an additional Bose AW-II radio (Evid. Hrg. June 21, 2010). In essence, plaintiff argues that the purchase and delivery of the radio was part of a previous settlement with defendants MCI and Wise not part of the agreement reached between defendants Donat and McDaniel.

The court finds that the plain reading of the agreement does not support plaintiff's interpretation. The agreement simply notes that a radio was "identified" in a previous settlement agreement (#400, Ex. 1, p. 4). It then states that defendants are to "obtain" and "provide" the radio to plaintiff's designee. Plain reading of the agreement indicates that defendants need only obtain a Bose radio and deliver it to plaintiff's designee. Defendants demonstrate that a package was delivered to Santa Barbara, California on February 4, 2010 and signed for by "McKay." Plaintiff does not produce any evidence to demonstrate that such a delivery did not take place and even appears to concede that the delivery did take place.

### 3. AM/FM Radio

The agreement noted that defendants would repair his AM/FM Radio or replace it (#400). In open court, defendant provided an AM/FM Radio with the capability of playing compact discs (Evid. Hrg. June 21, 2010). Plaintiff accepted the radio. *Id.* The court finds that this term of the agreement has been fully met.

### 4. MP3 Player

The agreement provided that defendants would give plaintiff an MP3 player. *See* #400, Ex. 1, p. 2. The agreement further provided that an "initial batch of music or other audio material selected by Browning shall be downloaded prior to providing the device." *Id.* Plaintiff introduced evidence to demonstrate that he had requested one-hundred six (106) songs (*See* Evid. Hrg. June 21, 2010, Pl. Ex. 1).

Defendants delivered the new MP3 player in open court (Evid. Hrg. June 21, 2010).[2] The

---

[2] The court notes that the parties previously encountered problems in the delivery of an MP3 player, which was the subject of previous court hearings. The delivery of a new MP3 player was promised by the defendants as part of an ongoing effort to resolve the dispute.

9

1  court reviewed that device and found it to be functioning properly. *Id.* However, the device only
2  contained sixty-five (65) songs, forty-one (41) songs short of the required amount. *Id.* Defendants
3  introduced evidence as to why providing the additional songs was not feasible. *Id.* Despite the
4  proliferation of online music providers, only a select few are capable to delivering music to inmates
5  in a maximum security institution. *Id.*

6  On this issue, the court finds that defendants have breached the term of the agreement but that
7  the breach is not material; defendants have substantially complied with the terms. However, in such
8  a case, a breaching party is obligated to place the non-breaching party in as good a position as if the
9  contract had been performed. *See Lagrange Const., Inc. v. Kent Corp.*, 88 Nev. 271, 496 P.2d 766
10 (Nev. 1972). Where the cost of completion of an agreement would be economically wasteful, the
11 appropriate measure of damages is the diminution in the value of the property caused by the breach.
12 *See Mort Wallin of Lake Tahoe v. Comm. Cabinet Co.*, 105 Nev. 855, 856, 784 P. 2d 954, 955 (Nev.
13 1989).

14 Here, defendants were obligated to deliver an MP3 player with a total of one hundred six
15 (106) songs. Yet plaintiff has only received a device with sixty-five songs, and defendants attest that
16 it is impossible to obtain the remaining songs. The court heard evidence that the cost to download
17 a song is sixty-two cents ($0.62) per song. At that rate, plaintiff has been denied $25.42 in song
18 value. Thus, the court finds that plaintiff is entitled to be compensated for the diminution in value
19 of the property. Therefore, the court orders defendants to provide $25.42 to plaintiff. Defendants
20 shall have thirty days from the date of the District Court's order to deposit $25.42 in plaintiff's Trust
21 II account. Defendants have previously demonstrated that they are capable of delivering such funds
22 (*See* #412, Ex. B). Should defendants not timely effectuate delivery of the said moneys into
23 plaintiff's Trust II account, the court will issue an order to show cause why defendants should not
24 be held in contempt.

### III. CONCLUSION

26 This case was ostensibly settled two years ago. As set forth in this Report and
27 Recommendation, aspects of non-compliance have been identified, and the court has assessed any
28 damages; defendants are to compensate plaintiff accordingly. As to all other remaining issues, the

10

1  court finds that defendants have satisfied the terms of the agreement.

2  Federal courts have strongly encouraged the settlement of cases. *See Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 626 (9th Cir. 1982) ("[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution."). Moreover, the public has "overriding interest in securing 'the just, speedy, and inexpensive determination of every action.'" *See In re Phenylpropanolamine Products Liability Litigation*, 460 F.3d 1217, 1227 (9th Cir. 2006) (quoting Fed. R. Civ. P. 1).

Civil rights plaintiffs enter settlement agreements because, in part, they realize that there is a benefit in the expeditious resolution of their claims. After eight years of litigation, plaintiff likely saw the benefit in resolving the dispute. Unfortunately for him and for the resources of the court, it appears that plaintiff's sole means to spur defendants to act was to return to court. Mr. Leslie has continually stressed to this court that he has acted in good faith. During the June 21, 2010 evidentiary hearing, Mr. Leslie went so far as to state that "when the term [good faith] is used in this courtroom, I think we [the defendants] use that term correctly and I think the opposing party does not" (Evid. Hrg. June 21, 2010). This court does not question Mr. Leslie's sincerity, but it does question his perception of the events in this case. With respect to several portions of the settlement agreement, defendants failed to act in a timely manner to settle the case. At the very least, such delays give the appearance of purposely disregarding one's contractual obligations. The court understands the difficulties inherent in inmate litigation with respect to institutional property protocols. However, the drafting of the letter does not involve any such complexities, nor does the deposit of funds to an inmate's Trust II account. Mr. Leslie appears to have created a first draft a simple letter one and a half years after the agreement. In addition, although the court ordered defendants to deposit sixty dollars to plaintiff's Trust II account by February 8, 2010, defendants demonstrate that funds were not deposited until February 9, 2010. Where state defendants, such as those here, do not perform settlement agreement obligations, it follows that prisoner litigants will have little incentive to settle. The court sincerely hopes that the future will demonstrate that such behavior is the exception and not the rule. Nevertheless, the court finds that defendants have satisfied the terms of the agreement. Where defendants have not performed, the court finds that they

11

have substantially complied with the terms of the agreement, and that the prompt delivery of $25.42 in plaintiff's Trust II account will serve to give plaintiff all benefits of the agreement.

### IV. RECOMMENDATION

**IT IS RECOMMENDED** that the District Court **GRANT IN PART** and **DENY IN PART** defendants' motion to enforce the settlement agreement (#402) and **DENY** plaintiff's motion to enforce the settlement agreement (#403).

**IT IS FURTHER RECOMMENDED** that the District Court order defendants to pay plaintiff twenty-five dollars and forty-two cents ($25.42) by depositing such funds in plaintiff's Trust II account within thirty (30) days of the District Court's order.

**IT IS FURTHER RECOMMENDED** that the District Court order that defense counsel and defendants be notified that failure to deposit twenty-five dollars and forty-two cents ($25.42) in plaintiff's Trust II account within thirty (30) days of the District Court's order will be a violation of this order and will result in an order to show cause;

**IT IS FURTHER RECOMMENDED** that the District Court **DENY** plaintiff's pending motions (#418, #420) as moot and order the Clerk to **CLOSE THE FILE** thirty (30) days from the date of the District Court's order.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

**DATED**: June 30, 2010.

*/s/ Valerie P. Cooke*

**UNITED STATES MAGISTRATE JUDGE**